# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| MICHAEL GRICE, | : | CIVIL ACTION | : |
| Plaintiff, | : | | |
| v. | : | | |
| | : | | |
| MICHAEL J. ASTRUE, | : | NO. 12-3502 | |
| COMMISSIONER OF SOCIAL SECURITY | : | | |
| Defendant | : | | |

## MEMORANDUM RE: PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT OR REMAND

**Baylson, J.**                                                                                             **May 15, 2013**

**I.**     **INTRODUCTION**

Plaintiff, Michael Grice, seeks judicial review of the Commissioner of the Social Security Administration's denial of his application for Disability Insurance Benefits and Supplemental Security Income. Grice contends that the Administrative Law Judge ("ALJ") erred in concluding he has the residual functioning capacity ("RFC") to perform light work. Specifically, Grice argues that the ALJ erred in (1) failing to credit his treating physician's opinion that he has manipulative limitations, and (2) relying on the Medical-Vocational Guidelines despite the ALJ's finding that Grice suffers from both exertional and nonexertional limitations. As discussed below, it is premature to rule on either of these issues because the ALJ does not appear to have considered the illegible treatment notes of Grice's treating physician. Accordingly, the Court will GRANT Plaintiff's motion to remand with an instruction that the ALJ obtain a legible copy of the treatment notes so that the ALJ's RFC determination can properly take into account all relevant medical evidence.

## II.  FACTUAL & PROCEDURAL BACKGROUND

A detailed recounting of the medical evidence in this case is not necessary for purposes of this opinion.  The relevant facts are as follows:

Grice is a 41-year-old male suffering from a degenerative disease of his cervical spine that has been variously diagnosed as cervical disc disease, spondylitis, myelomacia, and cervical myelopathy.  Grice claims he suffers various debilitating symptoms from this condition, including severe neck pain, limited flexibility, bilateral arm paresthesias, and weakness in both upper extremities.

On July 2, 2009, several weeks before filing for disability benefits, Grice received an MRI examination by Mark J. Kotapka, M.D.  This examination, which revealed "marked stenosis" in Grice's cervical spine, prompted Kotapka to recommend anterior cervical fusion surgery at the C3-7 levels.  Grice received an additional MRI on September 9, 2009 from John Handal, M.D.  As with Kotapka, Handal concluded that the narrowing of Grice's spinal cord space required surgical intervention.  On September 16, 2009, Grice underwent cervical fusion surgery.

In 2010, medical assessments of Grice's RFC produced contradictory conclusions.  One of the RFC assessments was conducted on February 18, 2010 by Elizabeth Kamenar, M.D., a state medical consultant.  Kamenar, who had never examined Grice, relied on the notes of Grice's consultative examination with Harvey Azarva, M.D., on January 27, 2010.  The other assessment was conducted on June 10, 2010 by Grice's treating physician, Lance Yarus, D.O.  Yarus first examined Grice on February 16, 2010, and had subsequent office visits with Grice on April 19, May 24, July 15, and August 19.

While Kamenar and Yarus both found Grice to have nonexertional limitations,[1] they disagreed on the nature and extent of these limitations. Both doctors found Grice to have postural limitations,[2] but only Yarus found Grice to have manipulative limitations.[3] The two doctors also reached different conclusions with respect to Grice's exertional limitations. Kamenar stated, for example, that Grice could "frequently" lift 10 pounds and stand/walk 6 hours in an 8-hour day. Yarus, by contrast, stated that Grice could "rarely" lift 10 pounds and could only stand/walk 1 hour in an 8-hour day.

At Grice's hearing on October 1, 2010, the ALJ stated that Yarus's treatment notes were illegible. Yarus had provided contemporary treatment notes for each of the four appointments that Grice had with him between April 2010 and August 2010. The ALJ stated "I can't make out Dr. Yarus's handwriting, that's the problem," before noting "I'd like to see that [Yarus's RFC assessment] is supported by the contemporary office visits." A.R. at 35.

On November 18, 2010, the ALJ issued a written opinion that rejected Grice's disability claim on the basis that his exertional and nonexertional limitations do not prevent him from performing a range of light work as defined in the Medical Vocational Guidelines. In reaching this conclusion, the ALJ placed "great weight" on Kamenar's RFC assessment and little weight on Yarus's. In explaining why she gave little weight to Yarus's opinion, the ALJ expressed incredulity at Yarus's assertion that Grice cannot sit, stand, and walk for more than three hours a day and that Grice needs to take a 15-minute break every 15 minutes. "There is nothing in Dr.

---

[1] Nonexertional limitations affect the non-strength requirements of a job. They include both postural limitations (e.g., reduced ability to kneel, stoop, crouch, crawl, balance, and climb), and manipulative limitations (e.g., reduced ability to reach, handle, finger, and feel).
[2] Kamenar concluded that Grice can occasionally climb stairs/ladders, balance, stoop, kneel, crouch, and crawl, while Yarus concluded that Grice can never climb ladders, only rarely bend/stoop, and never kneel or crouch.
[3] Yarus concluded that Grice can never reach in all directions, can only rarely feel through his skin receptors, and can occasionally handle/finger.

3

Yarus's treatment notes," the ALJ wrote, "that supports such an exaggerated assessment." A.R. at 28.

On April 16, 2012, the Appeals Council denied Plaintiff's request to review the ALJ's decision, thereby making the ALJ's ruling the Agency's final decision. On June 22, 2012, Plaintiff sought judicial review with this Court, (ECF No. 2), and, on October 3, 2012, moved for summary judgment or, in the alternative, remand (ECF No. 9).

Upon reviewing the Administrative Record and noticing apparently contradictory statements by the ALJ with respect to Dr. Yarus's treatment notes, the Court requested briefing from the parties on whether the case should be remanded "on the grounds that the current record does not allow for a reasoned review of the ALJ's dismissal of Dr. Yarus's assessment of Plaintiff's postural and manipulative limitations." (ECF No. 12). The parties briefed the matter, (ECF Nos. 13 & 14), and it is now ripe for resolution.

## III. LEGAL STANDARD[4]

A district court must uphold an ALJ's disability determination so long as it is supported by "substantial evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Id. A district court may not "weigh the evidence or substitute [its own] conclusions for those of the fact-finder." Id. "Evidence is not substantial," however, if the ALJ "failed to consider all relevant evidence or failed to explain the resolution of conflicting evidence." Sanchez v. Comm'r of Soc. Sec., 271 F. App'x. 230, 232 (3d Cir. 2008) (nonprecedential) (citing Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000)). In Burnett, the Third Circuit explained that "[i]n making a residual functional capacity

---

[4] This Court has subject matter jurisdiction of this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

4

determination, the ALJ must consider all evidence before him." 220 F.3d at 121. "Although the ALJ may weigh the credibility of the evidence," the Burnett court instructed that the ALJ "must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." Id. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." Id. (quoting Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

## IV. ANALYSIS

Based on the current record, the Court is unable to assure itself that the ALJ properly considered Dr. Yarus's treatment notes. Kutloski v. Astrue, No. 08-0075, 2009 WL 812146, at *2 (E.D. Pa. Mar. 26, 2009) ("[T]his court cannot assure itself that the ALJ actually considered and weighed that testimony."). The treatment notes, which this Court finds almost completely illegible, were illegible to the ALJ, as evident by the ALJ's comments at the hearing. Illegibility, however, is not a proper basis to disregard relevant medical evidence. Rodriguez v. Astrue, 2012 WL 5494659, at *7 n.11 (E.D. Pa. April 2, 2012) ("[I]llegibility would not be a sufficient reason for ignoring relevant evidence."). Several courts in this District have, accordingly, found reversible error where the ALJ disregarded treatment notes on the basis of their illegibility. Debias v. Astrue, No. 11-3545, 2012 WL 2120451, at *7 (E.D. Pa. June 12, 2012); Berrios-Vasquez v. Massanari, No. 00-2713, 2001 WL 868666, at *6 (E.D. Pa. May 10, 2001); see also Ellow v. Astrue, No. 11-7158, 2013 WL 159919, at *7 (E.D. Pa. Jan. 15, 2013) (holding that doctor's purportedly illegible notes did not justify a remand because "the ALJ did not have any obvious difficulty reading" them).

Also troubling is the fact that the ALJ's decision to give little weight to Yarus's RFC assessment was based, in part, on the ALJ's assertion that there was "nothing in Dr. Yarus's

5

treatment notes" that supported Yarus's assessment. A.R. at 28. While it is conceivable that the ALJ obtained a legible copy of the notes prior to issuing her opinion, there is nothing in the record to indicate that this was the case. Without a legible copy of Yarus's treatment notes, it was improper for the ALJ to assert that "nothing" in the notes supported Yarus's RFC assessment. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) ("[I]f the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but cannot reject evidence for no reason *or for the wrong reason*." (emphasis added)).

Defendant argues that the ALJ committed no error because the content of Yarus's treatment notes "could easily be interpreted when compared with the check marks noting nothing more than normal conditions." Elaborating on this point, Defendant states that "Dr. Yarus provided orthopedic treatment notes from April 19, 2010, May 24, 2010, July 15, 2010, and August 19, 2010, each of which noted that Plaintiff's head, back, and neck were 'ok.'" According to Defendant, "one presumes that the checkboxes were consistent with the handwriting." The problem with this seemingly reasonable point, however, is that it is based on a false assertion. Despite Defendant's inexplicable claim to the contrary, the "ok" box is *not* checked for Grice's "back" and "neck" on "each" of the four pages of Yarus's treatment notes. Instead, the notes show that Grice's back is only marked as "ok" on one of the four pages, while Grice's neck does not have a single unqualified "ok."[5] A.R. at 365-68. Further, the notes show that the "extremity" category—which may be significant to the assessment of Grice's manipulative limitations—received only one "ok." Id. The presently legible portion of the

---

[5] On two of the pages, the "ok" box for the neck did not receive any check. On the other two pages, a cross mark (accompanied by notes) appears to the right of the ok box. It is unclear what the cross mark means, but it is apparent (when comparing it, and its accompanying notes, to the checks that appear in the other ok boxes) that it is not an unqualified "ok."

6

treatment notes, therefore, do not evince a lack of materiality. Accordingly, "this Court cannot now assess whether the ALJ's determination that [Grice] has the residual functional capacity to perform 'light' work was supported by substantial evidence, let alone assess whether [Grice] lacks the residual functional capacity to even perform 'sedentary' work." Burnett, 220 F.3d at 123.

Finally, the Court finds no merit in Defendant's contention that a remand would be futile because the ALJ would "not have the authority to compel Dr. Yarus to clarify his notes." Not only do "ALJs have a duty to develop a full and fair record in social security cases," Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995), but the governing regulations at the time the ALJ issued its ruling required it to "seek additional evidence or clarification" from Yarus if his reports contained "a conflict or ambiguity that must be resolved." See 20 C.F.R. § 416.912(e); Ellow v. Astrue, No. 11-7158, 2013 WL 159919, at *7 n.4 (E.D. Pa. Jan. 15, 2013) (recognizing that Social Security Administration has eliminated this provision, but stating that it remains applicable to claims adjudicated by ALJ prior to March 26, 2012). Consistent with this regulatory requirement, Social Security Ruling 96–5p provides that:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

SSR 96–5p, 1996 WL 374183, at *6 (S.S.A. July 2, 2006). Accordingly, as some courts in this District have previously done, it is appropriate to remand a case back to an ALJ with instructions to "obtain legible treatment notes" from the source physician. See Debias, 2012 WL 2120451, at

*8. While it is possible that the ALJ's RFC analysis will reach the same result upon obtaining legible copies of Yarus's notes, such a result is by no means inevitable.

## V. CONCLUSION

Based on the foregoing considerations, the Court will GRANT Plaintiff's Motion to Remand this matter back to the ALJ. In so doing, the Court will instruct that the ALJ obtain legible treatment notes from Dr. Yarus and thereupon reassess Plaintiff's RFC.

An appropriate order follows.

O:\CIVIL 12\12-3502 Grice v. Astrue\opinion.docx